Ben Dillenburg v. Commissioner.
Dillenburg v. Commissioner
Docket No. 5627-64.
United States Tax Court
T.C. Memo 1967-133; 1967 Tax Ct. Memo LEXIS 128; 26 T.C.M. (CCH) 599; T.C.M. (RIA) 67133; June 19, 1967
*128 Held, upon the facts that the petitioner is not entitled to the following deductions: (1) A personal exemption of $600 for Mae Dillenburg, his former wife, who filed a separate tax return for 1961. (2) A loss from an alleged theft of farm income in the amount of $9,111. (3) A loss of $3,748.55 alleged to be a theft of funds, and deductions of $1,572, accounting and attorney fees, and $240, court costs, representing claimed deductions totaling $5,560.55. Held, further, that petitioner realized in 1961, but failed to report, additional income from ranch operations in the net amount of $849.74, and gain from the sale of property used in a business in the net amount of $835.14. Ben Dillenburg, pro se, P.O. Box 228, Harbor, Ore. Joseph Nadel, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined an income tax deficiency for 1961 in the amount of $1,269.95. The deficiency is the result of respondent's determinations that the petitioner is not entitled to several claimed deductions, and that he realized, but failed to report, certain items of income. The respondent has conceded that his original determination of unreported farm income should be reduced by $1,604.09, from $2,453.83 to $849.74. Effect will be given under Rule 50 to this concession by the respondent. Findings of Fact Petitioner filed a separate tax return for 1961 *130 with the district director of internal revenue at San Francisco, California. Petitioner was a resident of Sacramento, California in 1961. Mae B. Dillenburg is the former wife of Ben. Ben and Mae were married in October 1946. Prior to January 16, 1961, they agreed to separate and permanently to live apart. On July 5, 1961, they entered into a written agreement which is both a separation and property settlement agreement relating to the division of their community property, among other things. In paragraph 15 of this agreement, which was signed by petitioner and by Mae, each party agreed to file a separate income tax return for 1961, even though the parties were still married, and to pay federal and state income taxes upon his and her share of the net profits realized in 1961 from the operation of a chicken ranch and from the sale thereof. Also, it was agreed that Mae would continue to operate the chicken farm and that business, where the family home was located (where Mae would continue to live), pending the sale of the chicken farm, or ranch. Prior to January 16, 1961, Mae filed a suit for divorce from Ben in the Superior Court of San Joaquin County. That court issued an order *131 on January 16, 1961, which provided that pending the trial of that cause, Mae should conduct the chicken ranch business, in Manteca, California, except that she was required to deposit all items of income therefrom in a "ranch trustee account"; that she should pay out of the receipts from the business only the ordinary and necessary business expenses thereof, "including regular payments upon secured obligations [debts] of the parties"; and that Mae should render regular accounts of all of the income and disbursements to petitioner through his attorney. The accounting firm of Rue, Snell & Hutchison, in Stockton, California was appointed as the accountants, by the Superior Court, for the "ranch trustee account." By an order of the Superior Court dated May 11, 1961, Mae was ordered to deliver to the above-named accountants all ranch income which might thereafter accrue, and to direct the accountants to make all of the disbursements from the "ranch trustee account." Petitioner was represented by an attorney in the preparations of the above-described separation and community property settlement agreement and in the divorce proceedings. However, his first attorney, Lloyd Wilson, withdrew, *132 and petitioner retained a successor attorney, Robert Mertz. Two other attorneys, O'Reilly and Gore, represented petitioner, also. Gore and Mertz represented petitioner in preparing and negotiating the property settlement agreement, and the attorneys' fees in dispute here were paid to them by petitioner for those services. Petitioner also paid court costs in connection with the property settlement and the divorce proceeding. For these fees, petitioner took a deduction, in his separate income tax return for 1961, of $1,572 for accounting and attorneys' fees, and a deduction of $240 for court costs. The Superior Court granted an interlocutory decree of divorce to Mae in November 1961; the divorce became final in 1962. In October 1961, the chicken farm, or ranch, and the residence properties were sold. The net gain realized from the sale of the farm amounted to $3,340.57, of which one-half, or $1,670.28 was capital gain; and of that amount of capital gain, the petitioner's one-half share (as his share of the community property) was $835.14. With respect to these amounts of gain, there is no evidence and proof to the contrary in the record in this case. In 1961, there were outstanding *133 debts owing by petitioner and Mae to the Bank of Stockton, the First Michigan Bank and Trust Company, and the Central Valley Bank. Some of the income from the chicken farm was used to make payments on those debts. Also, petitioner was required under court order to make monthly payments in 1961 of $150 for the support of Mae, and $100 for the support of an adopted child of the parties. These amounts were modified by the Superior Court in May 1961 to $150 and $55, respectively. These payments were to be made out of the income of the chiken farm, at least in part, if not wholly. The chicken farm income has never yielded a net profit of as much as $9,000 a year. There were difficulties about the accounting, by the accountants and by Mae, for the gross income, disbursements, and net profit of the farm income in 1961. Petitioner believed that Mae appropriated to herself and failed to turn over to the "ranch trustee account", and to account for receipts or profits, in the respective amounts of $9,111 and $3,748.55, but in this case he failed to establish and prove that the above amounts of alleged farm profits, or farm receipts, had been misappropriated and stolen; and he failed to prove *134 that the chicken farm operations had produced in 1961 either the net sum of $9,111 or twice that amount. During 1961, petitioner was employed as a machinist by the Southern Pacific Railroad Company, and received wages of $5,419.57, of which amount there was with-held by the employer $612.67 for petitioner's federal income tax. In this income tax return for 1961, petitioner reported his wages. He also took itemized deductions totaling $14,671.55, as follows: Loss from ranch income
$ 9,111.00
Monies taken from Central Na-
tional Bank, Manteca
3,748.55
Accounting & attorneys fees
1,572.00
Court costs
240.00
$14,671.55
Petitioner did not report in his return any amount as his share of ranch profits, and his share of taxable gain from the sale of the ranch properties. On his return, petitioner claimed and deducted an exemption of $600 as an exemption for his wife. The respondent's agent, upon auditing petitioner's return for 1961, as shown on Form L-8, the 30-day letter to the petitioner, made computations of the gross and net income of the chicken farm operations in 1961, of the gain realized upon the sale of the farm properties, of the amount of the capital *135 gain from the sale thereof, of the loss on the sale of the personal residence (which is not deductible), and of other items. Except for a concession by the respondent at the trial of this case, stated below, petitioner did not prove in this proceeding that these various computations of the respondent's agent were incorrect. The respondent, in his statutory deficiency notice, determined that the net income from farm operations in 1961 was $4,907.66, of which one-half, or $2,453.83 was petitioner's share under the separation and property settlement agreement. In making the above determination, the respondent did not make a correct computation of one item involved. At the trial, respondent conceded the error and agreed that petitioner's share of the net profit from the farm operations must be reduced from $2,453.83 to $849.74, a reduction of $1,604.09. Ultimate Findings of Fact 1. Mae Dillenburg realized and received income of her own in 1961 from the operations of the chicken farm under the separation and property settlement agreement. 2. The income tax return for 1961 filed by the petitioner was a separate and individual tax return. 3. Petitioner is not entitled to an exemption *136 of $600 in 1961 for Mae Dillenburg because of the provisions of section 151(b) of the 1954 Code; and because he and Mae agreed to file separate tax returns for 1961. 4. The petitioner realized unreported income in 1961 from the farm operations profit in the net amount of $849.74; and unreported taxable gain from the sale of the farm properties in the amount of $835.14. 5. The court costs and attorneys' fees in the total amount of $1,812 were incurred by petitioner in connection with and were incident to the divorce and propertysettlement agreement, and were therefore nondeductible personal expenses. 6. Petitioner did not sustain a loss in 1961 in the amounts of $9,111 (alleged defalcations or thefts of farm income), and of $3,748.55 (alleged theft of funds from a bank), and he is not entitled to deductions for these amounts. 7. Petitioner is entitled to a standard deduction of $500. He is not entitled to any itemized deductions. Opinion Most of the questions presented are fact questions under which the petitioner had the burden of proof. He appeared without the help of counsel at the trial of this case. His contentions and claims have been fully considered, with particular *137 consideration of his efforts without the aid of an attorney. Petitioner was unable to prove that he had sustained and was entitled to deductions for alleged thefts of farm income and of bank deposits; and that he did not realize and receive taxable income, as his share of farm income, as well as his share of the gain from the sale of the farm properties in 1961. He admits that he received $15,233.54 out of the proceeds from the sale of the farm. It is held, and we find, that petitioner realized unreported farm income of $849.74, and taxable gain of $835.14; and that he is not entitled to loss deductions of $9,111 and $3,748.55. These determinations of the respondent are sustained. The issues involving the claimed deductions for attorneys' fees, court costs, and an exemption of $600 for petitioner's wife in 1961 involve both fact and law questions. These must be decided for the respondent. The record shows, and there is no proof to the contrary, that the lawyers' fees and court costs were incurred by petitioner and were incident to the divorce action, the legal separation from petitioner's wife, and the separation and property settlement agreement. Therefore, those expenses were *138 nondeductible personal expenses under section 262 of the 1954 Code. There is no evidence providing any basis for determining that any part of those expenses were business expenses of the farm operations and of the accounting for farm income. Petitioner failed to prove that he is entitled to any deduction in respect of those fees and court costs. ; . Under section 151(b) of the Code, a taxpayer may claim an additional exemption of $600 for his spouse, if a separate return is filed, only if the spouse has no gross income. It is clear in the record in this case that Mae had income in 1961 from her interest in the farm income. Petitioner is precluded by section 151(b) from taking this $600 exemption. See (C.A. 7, 1965), affirming a Memorandum Opinion of this Court, Charles W. Jamieson, (1964). Moreover, it was agreed in the property settlement agreement that petitioner and Mae each would file separate tax returns for 1961, and the return filed by petitioner was signed only by him. Respondent has included in petitioner's taxable income *139 only his share of the community earnings, pursuant to the property settlement agreement. It is held that petitioner's return was an individual, separate return, and that he and Mae elected not to file a joint return. See section 6013(a) of the Code; ; and . Decision will be entered under Rule 50.